UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TRENT DOUGLAS SHERMAN,

        Plaintiff,

v

MICHIGAN DEPARTMENT OF
NATURAL RESOURCES et al.,

        Defendant.

_____/

Case No. 18-13179
Honorable Thomas L. Ludington

**ORDER GRANTING MOTION TO DISMISS**

On October 12, 2018, Plaintiff Trent Douglas Sherman filed a complaint against the Michigan Department of Natural Resources ("DNR") and eight DNR employees in their individual and official capacities. ECF No. 1. Plaintiff claims that Defendants unlawfully arrested him and maliciously prosecuted him.

The eight DNR employees are as follows. Defendant Keith Creagh was the Director of the DNR and Defendant Dean Molnar was the Assistant Chief. ECF No. 1 at 4–5. Defendants Gary Hagles and Daniel Hopkins worked within the DNR Law Enforcement Division. Hagles was the Chief and Hopkins was a Captain. *Id.* The final four Defendants were all members of District 3 of the DNR Law Enforcement Division. Defendant Jim Gorno was a Lieutenant, Defendant Joe Molnar was a Sergeant, Defendant William Webster was a Field Training Officer, and Defendant Christopher Lynch was a Probationary Conservation Officer. *Id.* at 5–6.

On January 18, 2019, Defendants filed a motion to dismiss. For the following reasons, the motion will be granted.

**I.**

**A.**

According to Plaintiff's complaint, on October 17, 2015 at approximately 11:35 p.m., DNR Pilot Bill Green reported that there was a vehicle shining on the Fleco Camp. ECF No. 1 at 6. The shining was reported to have occurred between 11:15 and 11:20 p.m. The owners of the Fleco Camp had previously given Defendant Webster a key to the property gate.[1] They had asked him to monitor the property because there had been previous incidents of trespassers on the property that were suspected of poaching. *Id.*

Defendants Lynch and Webster arrived at the property at approximately 11:35 p.m. where they encountered Plaintiff and another individual.[2] *Id.* at 7. Lynch and Webster asked the individuals for identification and fur harvester licenses. *Id.* Lynch noted that Plaintiff's speech was slurred. Lynch accompanied Plaintiff to Plaintiff's vehicle and once there, asked Plaintiff whether he had any firearms in the vehicle. Plaintiff acknowledged that there were firearms in the vehicle and granted Lynch permission to search the vehicle. *Id.*

Lynch found a Ruger pistol case on the floor between the front and back seats where either the driver or passenger could access it. *Id.* Lynch subsequently confiscated the gun, ammunition, and case and asked Plaintiff to perform a series of Field Sobriety Tests, which Plaintiff performed. Lynch also asked him to perform a Prelminary Breath Test ("PBT"), but Plaintiff refused, requesting that he be permitted to contact an attorney. Plaintiff again refused to perform the PBT at which point Lynch arrested Plaintiff, placing him in handcuffs. *Id.* at 8. Plaintiff was arrested for shining with a weapon in possession, being visibly impaired while possessing a weapon, operating a vehicle while under the influence, and possessing a loaded firearm in a vehicle. *Id.*

---

[1] Plaintiff does not identify the owners of the Fleco Camp, though it appears that he contemplated doing so. He included the footnote "The Fleco Camp is private property owned by ???? located in Green Township." (question marks present in original) ECF No. 1 at n. 6.
[2] Plaintiff does not identify the individual, but includes in parentheses the question "(DO WE WANT TO IDENTIFY SPENCE FLETCHER?)." (capitalization present in original).

Webster cited Plaintiff for refusal of a PBT, shining with a weapon in possession, possession of a firearm .08 BAC, and operating while intoxicated. *Id.* Plaintiff was taken to jail where he again stated that he wanted to speak with an attorney.[3] He agreed to perform a DataMaster assessment of his blood alcohol content. At 2:26 a.m. it was determined that he was at a level 0.11 and at 2:29 a.m. it was determined that he was at a level 0.12. *Id.* at 9.

Plaintiff was ultimately charged with using an artificial light with a weapon accessible, using an artificial light to spot animals, and possession of a firearm while under the influence. *Id.* Judge Thomas J. LaCross of the 88th District Court found that the officers could not arrest Plaintiff, but that they did have sufficient information to investigate and charge him.

> Counts one and three are misdemeanors punishable by up to 90 days in jail each. The statute governing the arrest by a peace officer requires a warrant unless one of the exceptions applies, (see MCL 764.15). An analysis of the various exceptions contained in the statute reveals that no exception applies. Therefore, although no arrest could be made, the State had information to investigate and charge.
>
> Count two alleges that MCL 750.237(2) was violated in that Defendant "did, possess, or have under control a firearm while under the influence of alcoholic liquor, or having an alcohol content of 0.08 or more grams per 210 liters of breath, or his ability to use a firearm was visibly impaired because of the consumption of alcoholic liquor."
>
> For possessory crimes in Michigan, actual possession is not required; constructive possession is sufficient. *People v Minch*, 493 Mich 87, 91; 825 NW2d 560 (2012). "A person has constructive possession if he knowingly has the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons." *Id.* at 92.
>
> Moreover, in the context of firearms, "a defendant has constructive possession of a firearm if the location is known and it is reasonably accessible to the defendant." *People v Hill*, 433 Mich 464, 470; 446 NW2d 140 (1989)…
>
> The charge of possessing a firearm while intoxicated, contained in count two, shall be dismissed. The Defendant was not in actual possession of the firearm. Additionally, he did not have constructive possession of the firearm because he did not know of its location. Also, count one relies on possession and for the same reasoning is dismissed.

---

[3] Plaintiff does not identify the specific jail where Lynch and Webster transported him.

> The testimony of DNR Officer Christopher Lynch reflects admission by Defendant to using an artificial light to spot animals. This is a disputable fact for a jury determination. Thus, count three of the amended complaint shall continue to be prosecuted.

Order in re Def.'s M. Dismiss, ECF No. 1-8. Though Judge LaCross did not dismiss the shining charge, the prosecutor ultimately did. ECF No. 1 at 10.

### B.

Plaintiffs complaint presents five counts. Count I alleges that Defendants violated Plaintiff's rights under the Fourth Amendment to be free from unreasonable searches and seizures. Count II is against the DNR and alleges that the DNR had a custom, pattern, or practice of illegal searches and seizures and malicious prosecution. *Id.* at 11–13. Count III is against Defendants Creagh, Hagler, Dean Molnar, Hopkins, Gorno, and Joe Molnar. It alleges that they are liable for authorizing, approving, or acquiescing to Lynch's and Webster's deprivation of Plaintiff's rights. *Id.* at 13–14. Count IV states that Defendants conspired to deprive Plaintiff of his rights. *Id.* at 14–15. Count V states that Defendants had no probable cause to prosecute Plaintiff and are therefore liable for malicious prosecution.

### II.

Defendants have moved for dismissal of all five of Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Rule 12(b)(1) provides that a party may assert the defense that the court lacks subject matter jurisdiction. Rule 12(b)(6) provides that a party may assert the defense that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. Pr. 12(b)(6).

A pleading fails to state a claim under Rule 12(b)(6) if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor

and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted).

### III.

### A.

Defendants argue that the claims against the DNR and the individual Defendants in their official capacities must be dismissed pursuant to the Eleventh Amendment. ECF No. 8 at 6.

### 1.

Defendants contends that "[w]here there is no express waiver or Congressional abrogation, the Eleventh Amendment bars claims filed in federal court against a state and its agencies." ECF No. 8 at 7 (citing *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 73 (1996)). The DNR is an agency of the state of Michigan. The DNR has not consented to this suit nor has Congress abrogated Michigan's immunity under 42 U.S.C. §1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989).

Plaintiff acknowledges that the DNR "is a state agency, and is therefore entitled to sovereign immunity from Plaintiff's suit for monetary damages." ECF No. 11 at 5. However, he maintains that the Eleventh Amendment does not immunize the DNR from claims for injunctive relief. *Id.* Contrary to Plaintiff's assertion, the Supreme Court has held that "[i]t is clear, of course,

that in the absence of consent a suit in which the State or one of its *agencies* or *departments* is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984) (emphasis added). Accordingly, the Eleventh Amendment protects a state and its agencies from claims for injunctive relief.[4]

Defendants contend that Plaintiff's *Monell* claims are also untenable because the DNR is a government agency, not a municipality. ECF No. 8 at 7. In response, Plaintiff cites to Michigan case law and argues that "[g]overnmental immunity is no defense when a plaintiff alleges that by policy or custom, the State has violated a right conferred by our state constitution." ECF No. 11 at 7 (quoting *Smith v. Dep't of Public Health*, 410 N.W.2d 749 (1987)). However, Plaintiff has not brought a claim under a state Constitution. Instead, he has brought a claim under 42 U.S.C. §1983 which governs violations of the Federal Constitution.

Accordingly, the DNR will be dismissed as a defendant in Counts I, II, IV, and V.

**2.**

Defendants further contend that Plaintiff's counts against the individual Defendants in their official capacities must be dismissed because a state official may only be sued in their official capacity when the plaintiff seeks prospective relief for an ongoing violation of federal law. ECF No. 8 at 8. The Supreme Court has held that "[i]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.' *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)).

---

[4] Plaintiff also argues that under *Monell*, "a local government could be liable under 42 USC 1983 when the performance of an official policy or custom caused a person to be deprived of federal constitutional rights." ECF No. 11 at 7. However, the DNR is not a local government. It is a state agency. *Monell* only addresses the liability of municipalities, not state agencies.

A straightforward inquiry into the allegations of Plaintiff's complaint reveals that Plaintiff does not present allegations of ongoing violations of federal law nor does he seek prospective relief. Plaintiff's complaint only presents allegations related to the incident on October 17–18, 2015. The closest that he comes to alleging an ongoing violation of federal law is when he claims that "Defendants' conduct was in accordance with the practice, usage, policy and procedures, and/or customs of their employer State of Michigan DNR, said policies of deliberate indifference to Plaintiff's rights as secured under the U.S. Constitution." ECF No. 1 at 11. As explained above however, the DNR is a state agency, not a municipality. It cannot be found liable under Section 1983 on a *Monell* theory of liability. Furthermore, Plaintiff presents no contention that any of the individual Defendants in their official capacities are committing ongoing Constitutional violations.

The relief that Plaintiff seeks is also unsatisfactory for the same reasons. Plaintiff requests "injunctive relief against Defendant DNR by issuing a Permanent Injunction prohibiting Defendants from subjecting citizens such as Plaintiff to policies and procedures that violate their constitutional, statutory rights, and common law rights." ECF No. 1 at 16. Plaintiff cannot recover prospective relief from the DNR because the DNR will be dismissed as a defendant.

Accordingly, Plaintiff's claims against the individual Defendants in their official capacities will be dismissed.

**B.**

Defendants next contend that Plaintiff has failed to state a claim upon which relief can be granted. ECF No. 8 at 9.

**1.**

Defendants argue that Plaintiff's individual-capacity claims fail against Defendants Creagh, Hagler, Dean Molnar, Hopkins, Gorno, Joe Molnar, and Webster because Plaintiff does

not allege any unconstitutional action by them. *Id* at 10. In his response, Plaintiff only addresses the actions of Webster and Joe Molnar. ECF No. 11 at 8. He claims that "the entry onto private property and subsequent arrest of Plaintiff made by Defendant Lynch was unconstitutional; Webster was present and did nothing to prevent the unlawful search and seizure of the Plaintiff, and in fact, swore out a Complaint to charge Plaintiff, and therefore actually participated in the prosecution. Webster may also be held liable for lack of supervision." ECF No. 11 at 8.[5] Plaintiff's allegations that Webster actually participated in the prosecution contributes to Plaintiff's claims of malicious prosecution.

Concerning Plaintiff's allegations that Webster has supervisory liability, a Section 1983 claim must be based on more than a theory of *respondeat superior*. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Instead,

> [A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Id.* quoting *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982). Webster was present at the time Lynch arrested Plaintiff. As such, it is possible that he "knowingly acquiesced in the unconstitutional conduct" that Plaintiff alleges Lynch engaged in. Accordingly, Webster will not be dismissed as a defendant on this basis.

In Plaintiff's complaint, he presents no factual allegations involving Defendants Creagh, Hagler, Dean Molnar, Hopkins, Gorno, or Joe Molnar in relation to the incident with Plaintiff and Lynch. At most, Plaintiff asserts that they have supervisory roles within the DNR. However, he

---

[5] Defendants do not address Plaintiff's claim that Webster "actually participated in the prosecution." ECF No. 11 at 8.

makes no allegations that would indicate that these Defendants "at least implicitly authorized, approved, or knowingly acquiesced" to Lynch's arrest and prosecution of Plaintiff. *Id.* His pleading at most "offers labels and conclusions or a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Furthermore, Plaintiff never once references Creagh, Hagler, Dean Molnar, Hopkins, Gorno, or Joe Molnar in his entire response brief. The Sixth Circuit has held that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to…put flesh on its bones." *U.S. v. Sandridge*, 385 F.3d 1032, 1036 (6th Cir. 2004). Plaintiff does not reference these Defendants in his response, much less does he advert to them in a "perfunctory manner." Accordingly, Creagh, Hagler, Dean Molnar, Hopkins, and Gorno will be dismissed as defendants in Counts I and III.

**2.**

Defendants further argue that Plaintiff's Section 1983 and Section 1985 claims fail because they do not allege a constitutional violation. *Id.* at 11.

**a.**

Defendants contend that Plaintiff's §1983 claim against Lynch fails because Lynch had probable cause to arrest Plaintiff. *Id.* Defendants explain that "Plaintiff was arrested for shining with a weapon in possession (Mich. Comp. Laws § 324.40113(1)); visibly impaired while possessing a weapon (Mich. Comp. Laws § 750.237), operating while under the influence (Mich. Comp. Laws §257.265); and possessing a loaded firearm in a motor vehicle (Mich. Comp. Laws § 324.40111)." *Id.* at 12. Defendants argue that Plaintiff was intoxicated at the time of the arrest

and that after receiving consent from Plaintiff to search Plaintiff's vehicle, Lynch discovered a loaded weapon. *Id.* at 14. Additionally, Plaintiff admitted that he was engaged in "shining." *Id.*

In his response, Plaintiff argues that Defendants should be "collaterally estopped from taking this position, as the Alpena County District Court found, beyond a reasonable doubt, that Plaintiff did not have actual or constructive possession of his weapon." ECF No. 11 at 9. He continues by arguing that Judge LaCross determined that "no arrest could have been made for the crimes actually charged." *Id.* Concerning collateral estoppel, the Supreme Court has explained that:

> Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case…But one general limitation the Court has repeatedly recognized is that the concept of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a "full and fair opportunity" to litigate that issue in the earlier case.

*Allen v. McCurry* 101 S. Ct. 411, 414–415 (1980).

Plaintiff has raised the argument of collateral estoppel, but has not supported his argument with any legal authority or further analysis. He has not demonstrated that the state court case involved the same parties. The state case was between "People of the State of Michigan" and Plaintiff. This case is between the DNR and eight of its employees and Plaintiff. Additionally, Plaintiff has not demonstrated that Officer Lynch had a "full and fair opportunity" to litigate the issue of probable cause during this proceeding. Plaintiff asserts that Judge LaCross found that no arrest could have been made, but Plaintiff does not furnish any explanation as to whether Officer Lynch had the opportunity to litigate the question of probable cause to arrest Plaintiff. Again, Plaintiff has not adequately presented his arguments. *See U.S. v. Sandridge*, 385 F.3d 1032, 1036 (6th Cir. 2004) ("It is not sufficient for a party to mention a possible argument in the most skeletal

way, leaving the court to…put flesh on its bones."). Accordingly, the state court proceedings will not be deemed preclusive of the issue of probable cause.

In fact, it is clear that Lynch had probable cause to arrest Plaintiff. "A police officer has probable cause if there is a 'fair probability' that the individual to be arrested has either committed or intends to commit a crime." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (quoting *Northrop v. Trippett*, 265 F.3d 372, 379 (6th Cir. 2001)). "A police officer determines the existence of probable cause by examining the facts and circumstances within his knowledge that are sufficient to inform 'a prudent person, or one of reasonable caution,' that the suspect 'has committed, is committing, or is about to commit an offense.'" *Id.* (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). Additionally, probable cause is determined by considering the "totality of the circumstances." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000).

Plaintiff contends that "defendants' motion for summary judgment should be denied because at the time of Plaintiff's arrest and imprisonment, it was not illegal for him to drink or drive on private property." ECF No. 11 at 9. It should first be noted that Defendants have filed a motion to dismiss, not a motion for summary judgment. Second, Lynch arrested Plaintiff on four separate grounds: shining with a weapon in possession, being visibly impaired while possessing a weapon, operating a vehicle while under the influence, and possessing a loaded firearm in a vehicle. ECF No. 1 at 8.

Defendants argue that Lynch had probable cause because of Plaintiff's slurred speech and smell of alcohol. Under Michigan law, a person may not operate a vehicle while intoxicated "upon a highway or other place open to the general public or generally accessible to motor vehicles." Mich. Comp. Laws §257.625. Camp Fleco is private property. However, its road is generally

accessible to motor vehicles and thus, falls within the purview of the statute. The Michigan Court of Appeals has determined that:

> [T]he disjunctive phrases "open to the general public" and "generally accessible to motor vehicles" specify two distinct alternative places other than highways where driving a vehicle while under the influence of liquor is prohibited. Thus, even if a place is not "open to the general public," the OUIL statute is violated if a person, while under the influence of liquor, is driving in a place "generally accessible to motor vehicles."

*People v. Nickerson*, 575 N.W. 2d 804, 807 (Mich. Ct. App. 1998). Though private property, the Camp Fleco road is a place "generally accessible to motor vehicles." Accordingly, Plaintiff was prohibited from operating a vehicle while intoxicated.

Additionally, Plaintiff does not contest the fact that he admitted to Officer Lynch that he was shining. Furthermore, he granted Lynch consent to search his vehicle. It was reasonable for Lynch to conclude that Plaintiff had committed, was committing, or was about to commit an offense because Plaintiff admitted to Lynch that he had been shining and then showed Lynch his vehicle with the firearm inside. *Fridley*, 291 F.3d at 872. This is in addition to the host of other facts of which Lynch was aware, including the shining report from pilot Green, Plaintiff's slurred speech and smell of alcohol, and Plaintiff's failed sobriety tests.

Plaintiff makes passing reference to an argument that "the warrantless entry by these state actors was and is prohibited by law." ECF No. 11 at 4. However, Plaintiff acknowledged in his complaint that one of the property owners of Camp Fleco gave Lynch a key to "watch the property because of reports of trespassers on the property that were suspected of poaching." ECF No. 6.

Accordingly, Lynch will be dismissed as a defendant in Counts I and III. Additionally, because no Constitutional violation occurred, Webster will also be dismissed as a defendant in Counts I and III.

**b.**

Defendants argue that Plaintiff fails to state a claim for conspiracy under 42 U.S.C. §1985(3). ECF No. 8 at 15. A claim under 42 U.S.C. §1985(3) requires a party to allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003) (quoting *United Bhd. Of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–829 (1983)). Additionally, the statute only covers "conspiracies against: 1) classes who receive heightened protection under the Equal Protection Clause; and 2) 'those individuals who join together as a class for the purpose of asserting certain fundamental rights.'" *Bartell v. Lohiser*, 215 F.3d 550, 560 (6th Cir. 2000) (quoting *Browder v. Tipton*, 630 F.2d 1149 (6th Cir. 1980)).

Defendants contend that because Plaintiff has not alleged that he is a member of a protected class, his conspiracy claim must be dismissed. ECF No. 8 at 15–17. In neither his complaint nor his response does Plaintiff assert to be a member of a protected class. Furthermore, Plaintiff has not sufficiently pled a conspiracy claim under §1983. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987) ("It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983."). Accordingly, Count IV will be dismissed.

c.

Defendants argue that Plaintiff's claim of malicious prosecution should be dismissed because Defendants had probable cause to prosecute Plaintiff. ECF No. 8 at 17. In order to succeed on a claim of malicious prosecution, a plaintiff must prove that: (1) a criminal prosecution was initiated against the plaintiff and that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute"; (2) there was a lack of probable cause for the criminal prosecution; (3) as

a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; (4) the criminal proceeding was resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308–309 (6th Cir. 2010). In a malicious prosecution claim, the officer is not liable "when the claim is predicated on the mere fact that the officer turned over to the prosecution the officer's *truthful* materials." *Id.* at 314. (emphasis in original).

Plaintiff has not brought any claims that Defendants participated in the prosecution beyond submitting materials to the prosecution. Accordingly, his claim of malicious prosecution, Count V, will be dismissed.

## IV.

Accordingly, it is **ORDERED** that Defendants' motion to dismiss, ECF No. 8, is **GRANTED**.

It is further **ORDERED** that Plaintiff's complaint, ECF No. 1, is **DISMISSED**.

Dated: April 10, 2019                                         s/Thomas L. Ludington
                                                                        THOMAS L. LUDINGTON
                                                                        United States District Judge